**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cr-00095-4** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **MICHAEL KESTNER** | ) | |

## MEMORANDUM and ORDER

Before the court is defendant Michael Kestner's Motion for a Bill of Particulars (Doc. No. 209), which the government opposes (Doc. No. 212). In light of the government's representation, in its Response, that it had provided additional discovery to the defendant in December 2021, after he filed the Motion for a Bill of Particulars, the court directed the defendant to file a reply brief "particularly addressing what he still considers he is entitled to after receiving the 'additional discovery.'" (Doc. No. 213.) The defendant has now done so. (Doc. No. 216.) For the reasons set forth herein, the motion will be granted in part and denied in part.

## I.      BACKGROUND

The Superseding Indictment adding Kestner as a defendant was filed on October 9, 2019. (Doc. No. 60.) It charges Kestner and his co-defendants with one count of conspiracy to commit healthcare fraud, in violation of 18 U.S.C. § 1349, and fifteen counts of knowingly and willfully executing and attempting to execute a scheme to defraud Medicare, TennCare, and TriCare, all healthcare benefit programs affecting commerce, in violation of 18 U.S.C. §§ 1347(a) and 2.

In support of these charges, the Superseding Indictment alleges that, at all relevant times, MedManagement, Inc. ("MMI") was a Tennessee management company with its principal place of business in Franklin, Tennessee and that Kestner was the sole owner and CEO of MMI. (Doc.

No. 60 ¶ 8.) MMI was the majority owner of Pain MD, a Delaware limited liability company whose principal place of business was in Franklin, Tennessee. Pain MD operated pain and wellness clinics in Middle Tennessee, Virginia, and North Carolina. Kestner indirectly owned Pain MD and served as its President. (*Id.* ¶ 9.) The other defendants, all healthcare providers (three nurse practitioners and one physician's assistant), were employed by MMI or Pain MD. (*Id.* ¶ 10.)

The Superseding Indictment alleges that, beginning no later than January 2010 and continuing through May 29, 2018, the defendants knowingly agreed and conspired with each other and "others known and unknown to the Grand Jury" to commit healthcare fraud for the purpose of "unlawfully enrich[ing] themselves." (*Id.* ¶¶ 12–13.) To accomplish this purpose, the defendants represented to Medicare, TennCare, and TriCare that they provided services to patients—specifically Tendon Origin Insertion ("TOI") injections into patients' backs, along the spine—even though these services were not medically necessary (*id.* ¶¶ 14, 15) and often were "not provided as represented" (*id.* ¶ 15), as the injections were "anatomically impossible to perform as recorded in the medical records" (*id.* ¶ 18).

The Superseding Indictment alleges that Pain MD held itself out to be an "interventional" pain management practice, meaning that it claimed to provide pain management services ("including injections and durable medical equipment") that were intended to reduce patient reliance on opioids and other narcotic pain medications, when, in fact, these services were intended to increase Pain MD's revenues and enrich the defendants. (*Id.* ¶ 16.) As a result of the conspiracy, the defendants caused more than $27,537,383 to be billed to Medicare, which resulted in approximately $5,054,525 in reimbursement; more than $8.5 million to be billed to TennCare, resulting in approximately $101,078 in reimbursement; and more than $2,544,322 to be billed to TriCare, resulting in approximately $284,459 in reimbursement (for an alleged total of

approximately $38.5 million in false or fraudulent bills and more than $5 million in reimbursement for false claims). (*Id.* ¶ 19.)

The portion of the Superseding Indictment entitled "Counts Two through Sixteen," charging "Health Care Fraud," expressly incorporates the allegations supporting the conspiracy charge and then largely repeats the same allegations pertaining to the conspiracy. The Superseding Indictment states that Kestner and his co-defendants "did knowingly and willfully execute, and attempt to execute a scheme and artifice to defraud" the three healthcare programs by submitting claims for reimbursement for TOI injections into patients' backs that were not medically necessary, for the purpose of enriching themselves. (*Id.* ¶¶ 21, 22.)

The Superseding Indictment contains a chart inserted at paragraph 24, listing each enumerated Count Two through Sixteen and identifying the defendants charged in each specific count, the affected beneficiary's initials, the date of service, the claim receipt date, the service allegedly performed, the amount billed (a total of approximately $12,000 in false billing), and the program billed. (*Id.* ¶ 24.)) Kestner is charged in each of the counts. Aside from the information in the chart, the Superseding Indictment does not contain additional information related to the separate healthcare fraud charges, and it does not contain further substantiation of the conspiracy claim in Count One.

On December 7, 2021, the court entered a Memorandum and Order (Doc. No. 208) denying Kestner's Motion to Dismiss Superseding Indictment for Lack of Fair Notice and granting his Motion to Dismiss Counts Two, Seven, and Twelve of the Superseding Indictment as time-barred. Now, citing Rule 7(f) of the Federal Rules of Criminal Procedure, Kestner has filed the Motion for a Bill of Particulars, requesting that the court issue an order directing the government to file a bill of particulars responding to the following requests:

1. Paragraphs 13, 15, 21, and 22 of the Superseding Indictment [Doc. 60] ("Indictment") refer to "false and fraudulent claims" that were submitted to Medicare, TennCare, and TriCare. Please identify by date, patient name, and "Bates number" all such allegedly "false and fraudulent claims" that the government intends to introduce into evidence in its case-in-chief at trial, and describe how they were false and fraudulent.

2. Paragraph 15 more specifically refers to "false and fraudulent claims" for services that were "not provided as represented." Please identify by date, patient name, and "Bates number" all such claims that the government intends to introduce into evidence in its case-in-chief at trial, and describe how they were "not provided as represented."

3. Paragraph 17 refers to "anatomically incorrect injection procedures," and paragraph 18 refers to injections that were "frequently anatomically impossible to perform." Please identify by date, patient name, and "Bates number" all such claims fitting this description that the government intends to introduce into evidence in its case-in-chief at trial.

4. Does the government contend that all "Tendon Origin Insertion" injections that Pain MD medical providers administered were not "medically necessary"? If not, please identify by patient name, date, and "Bates number" the injections that the government contends were not medically necessary and that it intends to introduce into evidence in its case-in-chief at trial.

5. Please identify by name all of the known, but unindicted co-conspirators, to whom paragraph 12 refers.

6. If the government contends that the Pain MD patients who received Tendon Origin Insertion injections during the relevant period were victims of the alleged conspiracy and/or scheme to defraud (in addition to Medicare, TennCare, and TriCare), please identify all such patients by name and date of birth.

7. Under *United States v. Paulus*, 894 F.3d 267, 275 (6th Cir. 2018), the government must prove beyond a reasonable doubt that Defendant made statements "capable of confirmation or contradiction" in a prosecution under 18 U.S.C. § 1347(a). Please identify by patient name, date, and "Bates number" the statements that the government contends are capable of contradiction, and how so.

8. Concerning paragraph 19 of the Indictment, please itemize by patient name, date, and "Bates number" the billings that occurred as an alleged "result of the conspiracy."

9. Referring to page 3 n.1 of the Court's December 7, 2021, Memorandum and Order [Doc. 208], please confirm that the approximately $3.5 million figure referred to in paragraph 15 of the Superseding Indictment was "inadvertently carried over from [paragraph 17 of] the original Indictment . . . ."

(Doc. No. 209, at 1–3.)

In its Response, the government agrees that the defendant is entitled to additional information in relation to Request No. 9 and confirms, as the court deduced in the December 7, 2021 Memorandum and Order, that the "approximately $3.5 million figure from paragraph 15 of the Superseding Indictment was inadvertently carried over from the original Indictment." (Doc. No. 212, at 1 n.1.) Request No. 9, accordingly, is now moot. Otherwise, the government maintains that the defendant is not entitled to any of the additional information he seeks.

## II. LEGAL STANDARDS

"A bill of particulars is a formal written statement by the prosecutor providing details of the charges against the defendant." Charles Alan Wright & Arthur R. Miller, 1 *Federal Practice and Procedure* ("Wright & Miller") § 130 (4th ed. 2021 update). Under Rule 7(f) of the Federal Rule of Criminal Procedure:

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits. The government may amend a bill of particulars subject to such conditions as justice requires.

*Id.*

Whether to order a bill of particulars "raises a somewhat different question than whether the indictment is legally sufficient." *Wright & Miller* § 130. If an indictment is insufficient, it must be dismissed. It cannot be simply "saved" by a bill of particulars. *Id.* However, a pleading may be legally adequate but still not provide enough detail to enable the defendant to prepare adequately for trial. *Id.*

"A bill of particulars is meant to be used as a tool to minimize surprise and assist defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993). However, "[i]t

is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." *Id.* And "a defendant is not entitled to discover all the overt acts that might be proven at trial." *Id.*

"The grant or denial of a motion for a bill of particulars lies within the sound discretion of the trial court." *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991). Courts faced with a motion for a bill of particulars sometimes consider "the complexity of the charges, the clarity of the indictment, and the degree of discovery available to the defense absent a bill of particulars." *United States v. McQuarrie*, No. 16-CR-20499, 2018 WL 372702, at *5 (E.D. Mich. Jan. 11, 2018) (quoting *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001)). Typically, if a defendant has received "ample discovery" sufficient to answer the questions in his motion for a bill of particulars, the denial of such a motion is not an abuse of discretion. *See United States v. Page*, 575 F. App'x 641, 643 (6th Cir. 2014) (emphasizing that the defendant did "not claim that his discovery process was in fact unmanageable or that he was unable to prepare a defense"). In other words, full "access to discovery . . . weakens the case for a bill of particulars." *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005); *see also United States v. Tillotson*, 490 F. App'x 775, 778 (6th Cir. 2012) (holding that denial of the motion for a bill of particulars was not an abuse of discretion because the defendant could have avoided surprise at trial simply be diligently reviewing discovery produced by the government).

At the same time, the government does not necessarily fulfill its obligation to provide fair notice of the charges "merely by providing mountains of documents to defense counsel." *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987); *see also Page*, 575 F. App'x at 643 (rejecting the defendant's reliance on *Bortnovsky* because he had not claimed that the discovery provided to him was "unmanageable"). Similarly, the government cannot defend against a motion

for a bill of particulars by asserting that "'[t]he defendant knows what he did, and has all the information necessary.'" Wright & Miller § 130 (quoting *United States v. Smith*, 16 F.R.D. 372, 375 (W.D. Mo. 1954)). That argument presumes that the defendant is guilty. Because the Constitution requires that the defendant be presumed innocent, the defendant should also be presumed ignorant of the factual basis for the charges. *Id.*

A bill of particulars may be necessary to clarify the alleged date and location of certain charged actions. *See United States v. Sanders*, 462 F.2d 122, 123 (6th Cir. 1972) (affirming the district judge's order "to state with more particularity the date on which the alleged possession occurred and to designate the place with particularity and to allege the city and state"); *United States v. Dirr*, No. 3:08-CR-42, 2009 WL 2169871, at *2 (E.D. Tenn. July 21, 2009) (ordering the government to "provide a bill of particulars listing all locations that comprise the 'and elsewhere' in which the conspiracy in Count One is alleged to have occurred"); *United States v. Ferguson*, 460 F. Supp. 1, 4 (E.D. Tenn. 1977) (ordering the Government to identify the specific date and location where certain offenses were alleged to have occurred).

## III. DISCUSSION

The court having denied his Motion to Dismiss the Superseding Indictment for Lack of Fair Notice (Doc. No. 180), the defendant now moves for a bill of particulars. He insists that he is not "seeking matters of 'evidentiary detail,' but basic information about the core of the charges he must meet." (Doc. No. 209, at 3.) He also notes that this is not a case in which he has been deprived of discovery. To the contrary, "the defense is awash in approximately one full terabyte of discovery material." (*Id.* at 4.) He argues that the sheer volume of discovery material contributes to his inability to adequately prepare for trial in this case. Each of the categories of information he requests is addressed separately below.

1.      *"False and Fraudulent Claims."* As noted above, the defendant asks the court to order the government to identify by date, patient name, and Bates number the false and fraudulent claims referenced in paragraphs 13, 15, 21, and 22 of the Superseding Indictment that the government intends to introduce into evidence in its case-in-chief in support of the conspiracy charged in Count One and the individual fraud claims enumerated in paragraph 24. The defendant also demands that the government describe how the claims are false and fraudulent. In further support of this request, the defendant argues that he seeks to be given fair notice of which claims are allegedly fraudulent—out of the "mountain of material that the government has produced in discovery"—and "what made them so." (Doc. No. 209, at 4.) That is, the defendant wants the government to clarify whether it contends only that the services provided were not medically necessary or whether it believes the claims were false or fraudulent for some other or additional reason.

In response, the government argues very generally that the defendant seeks what amounts to a "road map as to how the government intends to use" at trial the evidence it has produced; that the defendant is not entitled to the information he seeks; and, even if he were, that "much of it has been provided through the detailed allegations in the Superseding Indictment and the detailed and extensive discovery the Defendant has received." (Doc. No. 212, at 3.) The government insists, in particular, that the Superseding Indictment, standing alone, "obviates the need for a bill of particulars" and notes that the court has already found the Superseding Indictment sufficiently specific to withstand the defendant's Motion to Dismiss. (*Id.* at 3, 4.) The government does not dispute the defendant's characterization of the quantity of discovery produced as "mountainous," but it points out that the discovery includes witness interview reports for former employees and former patients of the defendant's clinics, Medicare claims records, and patient records. The

government further claims that, with the discovery production, it provided "discovery letters containing logs which describe the items produced and their corresponding Bates numbers." (*Id.* at 5.) In addition, in response to questions from defense counsel, the government provided "additional charts to guide [the defendant] through the provided discovery." (*Id.*) The government has also met with defense counsel twice to "attempt to guide [them] to the specific Medicare data which corresponds with Counts Two through Sixteen of the Superseding Indictment and to answer defense counsel's questions about the nature of that data." (*Id.*)

Finally, as noted above, the government contends that it provided additional discovery to the defendant after he filed the Motion for a Bill of Particulars. One of the newly produced documents is the government's expert disclosure, which "includes a thorough report from a medical expert explaining in detail why each of the injections which are the bases of Counts Two through Sixteen . . . are medically unnecessary or medically impossible, and therefore fraudulent." (Doc. No. 212, at 6.) The new discovery also includes additional documents related to Medicare claims and billing.

In his Reply, the defendant insists that the new discovery does not answer the question of what the "false and fraudulent claims" were, except insofar as the government provided the electronic versions of the so-called "1500 Forms"[1] "for single visits of Patients T.C., M.S., and T.A. in 2018 that seemingly match up with the 'Dates of Service' in Counts Ten, Fourteen, and Fifteen of the Indictment." (*See* Doc. No. 216, at 2 n.1.) The defendant argues that, although the

---

[1] The Sixth Circuit has explained that "[s]ubmission of Medicare claims through a carrier requires providers to submit a '1500 Form' that includes information regarding the patient, the provider, and the services rendered, including the CPT code." *United States v. Semrau*, 693 F.3d 510, 513 (6th Cir. 2012). In addition, the 1500 Form includes a notice stating: "Anyone who misrepresents or falsifies essential information to receive payment from federal funds requested by this form may upon conviction be subject to fine and imprisonment under applicable federal laws." *Id.* at 513–14.

government's expert report is somewhat helpful, the expert's review "was evidently limited to the charts of the fourteen patients referred to in Counts Two through Sixteen" but that the specific fraud claims identified in Counts Two through Sixteen of the Superseding Indictment together amount to far less than "the approximately $38.5 million in false bills" purportedly submitted to Medicare, TennCare, and TriCare, as alleged in the conspiracy count of the Superseding Indictment. (*See* Doc. No. 216, at 2; *see also* Doc. No. 209, at 8.)

In short, the defendant asserts in his Reply that, at a minimum, he should receive the 1500 Forms for "*all* of the allegedly false and fraudulent billings that the government intends to prove at trial." (Doc. No. 216, at 2 (emphasis in original).) Alternatively, he asks that, if the government contends that "*all* of the Tendon Origin Insertion injections" administered at the defendant's clinics throughout the course of the conspiracy were not medically necessary and, therefore, that the billing for all of them was medically unnecessary, then the government should so state.

The court's denial of the Motion to Dismiss Superseding Indictment does not dispose of the Motion for a Bill of Particulars. As set forth above, a finding that the indictment is insufficient requires dismissal of the indictment. The court found that the Superseding Indictment was not "irredeemably ambiguous," except with respect to the allegations concerning durable medical equipment. (Doc. No. 208, at 8.) The allegations regarding the conspiracy, however, are not particularly detailed. Moreover, the government has not responded to the defendant's argument that the sheer volume of discovery material produced by the government has hampered the defendant's ability to prepare for trial, nor has it acknowledged the defendant's assertion that the amount of money at issue in Counts Two through Sixteen is less, by several orders of magnitude, than the total value of the conspiracy as calculated, literally down to the penny, by the

government.[2]

Regarding the defendant's claim that the government should, at a minimum, provide the 1500 Forms for all of the allegedly fraudulent claims, the court observes that the parties filed a Joint Status Report Regarding Discovery on November 29, 2021, just two weeks before the defendant filed his Motion for a Bill of Particulars. (Doc. No. 207.) In that document, the government represents that the parties had a discussion regarding discovery on November 10, 2021, during which "the government's analyst shared her computer screen with the call participants [including the "parties' attorneys (absent Peter Strianse) and the defense's paralegal and the government's data analyst," and excluding Emma Greenwood, the discovery coordinator for the defense] and walked the parties through the location of the alleged false billing statements contained in the Medicare data." (*Id.* at 1.) The government explained its position that the Medicare data constituted a "business record that contained the alleged false statements/bills to the government." (*Id.*) The government also states that it notified defense counsel on November 23, 2021 that it had asked Medicare to provide "the original health insurance claim forms, also known as 'Form 1500,'" but that, as of that date, the government had not received the Form 1500s. (*Id.* at 2.) The government expressly states that it will provide to counsel for the defendants any Form 1500s the government receives from Medicare "on a rolling basis as they are received." (*Id.*) However, if Medicare is no longer in possession of the Form 1500s, the government intends to "rely on the data provided in the aforementioned Medicare business records" to prove its case. (*Id.*)

Defendant Kestner's position articulated in the Joint Status Report is that, without the Form

---

[2] Again, the court dismissed as time-barred Counts Two, Seven, and Twelve, so the amount at issue in the enumerated fraud counts has been further reduced. (Doc. No. 208, at 15.)

1500s, the government will be unable to prove that the defendant "made a statement capable of confirmation or contradiction" as required for a conviction under 18 U.S.C. § 1347. (*Id.* at 3 (citing *United States v. Paulus*, 894 F.3d 267 (6th Cir. 2018)).) The defendant continues to take that position in his Motion for a Bill of Particulars. The government responds, in a somewhat ambiguous footnote, that

> prosecutions under Section 1347 do not require the government to prove an affirmative false statement. *See, e.g.*, *United States v. Bertram*, 900 F.3d 743, 748 (6th Cir. 2018) (affirming Section 1347 conviction because the defendants omitted facts which, if disclosed, would have led insurer to conclude that the defendants' claims were for services that were not medically necessary). When the government does allege that the defendant made a false statement, then the statement must be "capable of confirmation or contradiction." *United States v. Paulus*, 894 F.3d 267, 275 (6th Cir. 2018) (holding that a provider's certification regarding medical necessity is such a statement).

(Doc. No. 212, at 4 n.2.)

In light of the government's representation that it has produced all of the Form 1500s in its possession and will continue to produce any additional Form 1500s it receives from the government, the court will deny as moot the defendant's request that the government be required to produce these forms. However, in light of the government's statement that § 1347 does not require the government to prove an affirmative false statement if it intends to prove a violation of the statute through proof of the defendant's omission of material facts that, if disclosed, would have led the insurers to deny claims for services as not medically necessary, the government must affirmatively state whether it intends to prove claims based on affirmative false statements, on fraudulent omissions, or both.

In addition, with regard to the defendant's claim that he has been inundated with a mountain of billing and claims data, the government must confirm whether it has produced only billing information that it contends relates to false or fraudulent claims or whether it has, instead, produced all billing information in its possession relating to the defendant's billing for TOI injections (or

otherwise). Further, if the government's position is that all of the TOI injections administered at the defendant's clinics throughout the course of the conspiracy were not medically necessary, then the government must so state. The defendant, however, is not entitled to an explanation or description by the government as to how it believes each claim to be false and/or fraudulent.

2. *"Claims for Services Not Provided as Represented."* Defendant Kestner seeks clarification of Paragraph 15 of the Superseding Indictment, which alleges that the conspiring defendants submitted false claims for services that were "medically unnecessary and not provided as presented." (Doc. No. 60 ¶ 15.) He contends that he has "no clue" as to which claims this description applies or as to what it means and insists that, if the government intends to offer proof that there were claims for services that meet this description, it should provide him fair notice of which claims, as a matter of due process and fair notice.

The government does not respond directly to this request, but the Superseding Indictment explains the government's theory that at least some of the TOI injections for which the defendant submitted bills were "anatomically impossible to perform as recorded in the medical record." (Doc. No. 60 ¶ 18.) In addition, the government contends that its medical expert "explains in detail why each of the injections which are the bases of Counts Two through Sixteen . . . are medically unnecessary or medically impossible, and therefore fraudulent." (Doc. No. 212, at 6.) That explanation, coupled with the information provided in response to the defendant's first request, should adequately clarify the government's use of the phrase "not provided as presented" with respect to TOI injections. The court will not require a bill of particulars to further address this request.

3. *"Anatomically Incorrect" and "Anatomically Impossible" Injections.* Paragraph 17 of the Superseding Indictment alleges that Kestner was involved in "training" practitioners at

his clinics to "increase their "productivity" by, among other things, instructing them on "inappropriate care protocols and anatomically incorrect injection procedures." (Doc. No. 60 ¶ 17.) Kestner seeks clarification of the allegation in Paragraph 17 as to what the government means by these improper procedures. As it appears that the government's medical expert report has provided this clarification, the court will not require a bill of particulars to address this request.

4.    *Lack of Medical Necessity*. The defendant contends that it is unclear whether the government intends to prove that all of the TOI injections provided at the defendant's clinics for the duration of the alleged conspiracy were not "medically necessary." The government's response to the defendant's first request, as well as its expert report, should sufficiently address this concern.

5.    *Known, Unindicted Co-Conspirators.* As the defendant acknowledges, motions for bills of particulars commonly request information about known but unindicted co-conspirators, and such requests are commonly denied. (Doc. No. 209, at 6.) In fact, it is well established in this circuit that "the Government is not required to furnish the name of all other co-conspirators in a bill of particulars." *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004). As the Sixth Circuit has explained, in rejecting a defendant's argument that defense counsel's "ability to prepare for trial was impeded because he did not have the name of the co-conspirator before trial," a "defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown." *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991); *see also Page*, 575 F. App'x at 643 ("[T]he government is not obliged to provide the names of a defendant's alleged co-conspirators"); *United States v. Musick*, 291 F. App'x 706, 724 (6th Cir. 2008) ("Nor is the Government required to furnish the names of all other co-conspirators." (citing *Crayton*)). At the same time, in appropriate circumstances, it is not an abuse of discretion to grant a motion for a bill of particulars providing this information. *See, e.g.*, *United States v. Mills*, 204 F.3d 669, 670 (6th

Cir. 2000) (reflecting that that the district court had ordered disclosure of the known, unindicted co-conspirators); *United States v. Dempsey*, 733 F.2d 392, 394 (6th Cir. 1984) (same); *United States v. Gonzalez*, No. 207-CR-071-JDH-2, 2007 WL 1245884, at *3 (S.D. Ohio Apr. 27, 2007) (distinguishing *Rey* and directing the government to provide the identities of all known, unindicted co-conspirators).

The defendant here argues only that the court should exercise its discretion to order the government to provide the names of known co-conspirators because of the lengthy duration of the alleged conspiracy and the complexity of the case. He does not actually contend that his ability to prepare for trial will be significantly impaired without that knowledge. Instead, he claims that the "prompt disclosure" of the identities of known co-conspirators "could only tend to make for a more orderly trial." (Doc. No. 209, at 7.) The government does not respond substantively to that argument and, instead, simply cites the law providing that disclosure of the identities of co-conspirators is not required.

The court finds that Kestner has not provided a compelling argument for why the court should deviate from the standard course of action, which is to deny requests that the government be required to provide this information. The request in this case will, likewise, be denied.

6. *Identities of Patient-Victims.* The defendant cites *United States v. Chalhoub*, 946 F.3d 897, 903 (6th Cir. 2020), as recognizing that "it is appropriate for a bill of particulars to identify the victims of a scheme to defraud so that a defendant can prepare his defense." (Doc. No. 209, at 7.) *Chalhoub*, however, involved an evidentiary challenge in which the defendant cited caselaw concerning bills of particulars. The court simply noted that the defendant was "pointing us to cases discussing a pleading issue in making an evidentiary objection" and that "bill-of-particulars law is not directly on point." *Chalhoub*, 946 F.3d. at 903, 904. Nor did the court find it

particularly relevant, since what was at issue was the defendant's "right to put forth a defense," which "encompasses two main categories: notice and an opportunity to be heard." *Id.* at 904. The court held that the defendant in that case was deprived of neither.

The government here must prove false claims; the identity of the patient-victims of the defendant's allegedly fraudulent practices is entirely ancillary to that question and, in any event, will largely be revealed by the government's production of the information responsive to the defendant's first request.

7. *"Statements Capable of Confirmation or Contradiction."* Citing *United States v. Paulus*, 894 F.3d 267 (6th Cir. 2018), the defendant states that, because the government must prove beyond a reasonable doubt that the defendant made (or caused to be made) statements "capable of confirmation or contradiction" for a conviction under 18 U.S.C. § 1347(a), the government should be compelled to provide him with "fair notice" of what the allegedly false statements were and where they appear. (Doc. No. 209, at 8 (quoting *Paulus*, 894 F.3d at 275).) The government responds that, to prove a violation of § 1347, it must only show that the defendant omitted facts that, if disclosed, would have led the insurer to concluded that the defendants' claims were for services that were not medically necessary. (Doc. No. 212, at 4 n.2 (citing *United States v. Bertram*, 900 F.3d 743, 748 (6th Cir. 2018)).) However, it also concedes that, "[w]hen the government does allege that the defendant made a false statement, then the statement must be 'capable of confirmation or contradiction.'" (*Id.* (quoting Paulus, 894 F.3d at 275 (6th Cir. 2018), as holding that a provider's certification regarding medical necessity is such a statement)).)

The information it will be required to produce in response to the defendant's first request should satisfy any ambiguity on this point, and the court will not require additional clarification.

8. *Components of the Billing Amounts Specified in Paragraph 19.* Paragraph 19 of the

Superseding Indictment alleges with great specificity that, as a result of the conspiracy, the defendants caused in excess of $27,537,383.17 to be billed to Medicare, resulting in approximately $5,054,525.07 in reimbursement; in excess of $8,567,657.00 to be billed to TennCare, resulting in approximately $101,077.79 in reimbursement; and in excess of $2,544,322.01 to be billed to TriCare, resulting in approximately $384,458.51 in reimbursement. The defendant notes that the degree of specificity in these figures reflects that the government intends to offer proof of false claims far in excess of the relatively paltry amounts involved in Counts Two through Sixteen and argues that it is entitled to some specification for where in the record the itemization of these figures can be found.

Request No. 8 appears to overlap substantially with other requests, including the first, and should be answered with sufficient specificity by the government's response to that request.

## IV.     CONCLUSION AND ORDER

Kestner's co-defendants—none of whom has filed a motion for a bill of particulars—are scheduled to go to trial more than three months before Kestner, Kestner's Motion to Sever Under Rule 14(a) having been granted. (*See* Doc. Nos. 157, 189, 192.) Assuming that trial proceeds, it will provide Kestner with a substantial amount of information as to how the government intends to try its case against him. Moreover, under the Order entered on September 23, 2021, the government will be required to make available for inspection "all exhibits to be used at the trial" no later than October 7, 2022, a full four months prior to Kestner's scheduled trial date of February 7, 2023, which will also give Kestner substantial insight, well in advance of trial, of the government's strategy and theory of liability. In addition, the government has agreed to provide to Kestner whatever 1500 Forms Medicare produces to the government.

Given that backdrop, and in light of the vast amount of discovery produced in this case and the government's efforts to walk Kestner's counsel through it, Kestner's Motion for a Bill of

Particulars is **GRANTED IN PART AND DENIED IN PART**, as follows:

The motion is **GRANTED**, insofar as the government is hereby **DIRECTED** to (1) affirmatively state whether it intends to prove the claims against Kestner based on affirmative false statements, on fraudulent omissions, or both; and (2) confirm whether it has produced only billing information that it contends relates to false or fraudulent claims or whether it has, instead, produced all billing information in its possession relating to the defendant's billing for TOI injections (or otherwise). Further, if the government's position is that all of the TOI injections administered at the defendant's clinics throughout the course of the conspiracy were not medically necessary, then the government must so state.

In all other respects, the motion is **DENIED**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge